UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAROL JORDAN,

                    Plaintiff,

            v.

VARGAS, et al.,

                    Defendants.

Case No. 17-cv-03706-HSG

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 47

Plaintiff, a California inmate incarcerated at Salinas Valley State Prison ("SVSP"), has filed the instant *pro se* action pursuant to 42 U.S.C. § 1983, alleging that SVSP correctional officers Vargas, Alvarez and Garcia violated his constitutional rights. Now pending before the Court is defendants' motion for summary judgment. Dkt. No. 47. Plaintiff has filed an opposition, Dkt. No. 51, and defendants have filed a reply, Dkt. No. 55. For the reasons set forth below, the Court GRANTS the defendants' motion for summary judgment.

## BACKGROUND

### I.    General Overview

The following facts are undisputed. During the relevant time period, plaintiff worked as a second watch porter on SVSP Facility D, Yard D2, Housing Unit 5, and his supervisor was Defendant Vargas. On April 2, 2017, Defendant Vargas worked as a floor officer on Housing Unit 6; was not in charge of plaintiff's schedule that day; and did not supervise him at his porter position that day. That day, plaintiff was assaulted by inmate Brandon Traveen Carr on the yard in SVSP housing unit D2. The following day, plaintiff was again assaulted by Carr. As a result of the assault, Plaintiff suffered serious bodily injury, including a bilateral jaw fracture, resulting in plaintiff being hospitalized and inmate Carr being issued a rules violation report for assault on an

inmate causing great bodily injury and transferred to administrative segregation.

Plaintiff's claims arise out of the events of April 2 and 3, 2017. In the operative complaint, plaintiff alleges that Defendant Vargas refused to allow him to carry out his job duties and he informed Defendant Vargas that he would submit a staff complaint regarding this refusal. In response, Defendant Vargas and Alvarez retaliated against plaintiff by ordering Carr to attack plaintiff on April 2 and 3, 2017, and by refusing to provide plaintiff with medical attention after the April 2, 2017 attack, in violation of the First Amendment's prohibition on retaliation for accessing the courts and the Eighth Amendment's prohibition on deliberate indifference to an inmate's safety and deliberate indifference to an inmate's serious medical needs. Plaintiff also alleges that Defendant Vargas and Alvarez's actions constituted a civil conspiracy. Plaintiff further alleges that Defendant Garcia refused to provide him with medical attention after the April 2, 2017 attack, in violation of the Eighth Amendment. *See* Dkt. No. 19; Dkt. No. 21.

The parties disagree as to why Plaintiff was attacked.

According to plaintiff, the Northern Riders prison gang ordered Carr to attack plaintiff because plaintiff had sought a job on the yard crew, a position the Northern Riders had designated for their gang members, and Defendants Vargas and Alvarez coordinated the attack in retaliation for plaintiff stating that he would file a complaint against Defendant Vargas for refusing to allow plaintiff to carry out his job duties.

According to defendants, inmate Carr independently decided to attack plaintiff because plaintiff had "snitched" on him; Defendants Vargas and Alvarez had no involvement with, or prior knowledge of, the attack; and on April 2, 2017, Defendant Vargas was working in SVSP housing unit D6 and not in D2.

The parties also disagree as to whether defendants were deliberately indifferent to his serious medical needs. Plaintiff alleges that defendants denied him medical attention on April 2, 2017, despite his repeated requests. Defendants allege that plaintiff did not suffer serious injuries from the April 2nd attack and neither required nor requested medical attention.

Finally, the parties also disagree as to whether plaintiff exhausted his administrative remedies. Defendants argue that plaintiff only submitted only one relevant grievance prior to

2

filing this action and that this grievance was not exhausted. Defendants further argue that although plaintiff filed three more relevant grievances between filing this action and filing the operative complaint,[1] these grievances were properly cancelled or rejected in accordance with prison regulations. Dkt. No. 47 at 5-7, 14-18. Plaintiff argues that he attempted to exhaust his administrative remedies through at least six separate grievances filed while incarcerated at California Men's Colony Hospital but the CDCR's administrative remedies were effectively unavailable to him. Dkt. No. 51 at 2-6.

## II.        Plaintiff's Factual Allegations

From January to April 2017, correctional officers stationed at SVSP Facility D, Yard D2, consistently showed favoritism to the Northern Riders which assisted the Northern Riders in recruiting members. Northern Riders were given preferred job placements as yard crew, porters, and clerical staff, and were given recreational, visiting, special purchase, canteen and laundry privileges. Dkt. No. 51-1 at 4. The Northern Riders were allowed to hold large meetings on the yard, and to intimidate, extort and assault inmates. Dkt. No. 51-1 at 4.

During this time period, plaintiff was a second watch lead porter for Housing Unit 5, and his supervisor was Defendant Vargas. Dkt. No. 51-1 at 4. In the weeks prior to April 2, 2017, the relationship between plaintiff and Vargas was nonexistent and was not improving. Defendant Vargas refused to allow plaintiff to perform his assigned job duties. Dkt. No. 51-1 at 4. Plaintiff informed Defendant Vargas that he would file a grievance if Defendant Vargas continued to prevent him from carrying out his job duties. Dkt. No. 51-1 at 4. Because of Defendant Vargas's actions, plaintiff sought to change his job to Facility D2 yard crew. Dkt. No. 51-1 at 4. The Northern Riders gang leader told plaintiff that this job was reserved for Northern Riders gang members. Dkt. No. 51-1 at 4. Plaintiff spoke to Defendant Vargas about switching from second watch porter to Facility D2 yard crew. Dkt. No. 51-1 at 4. Defendant Vargas stated that he would look into it. Dkt. No. 51-1 at 4. An hour after this conversation, the Northern Riders gang leader approached plaintiff, and said, "Why are you still trying to get the homies yard crew job?," which

---

[1] The amended complaint, filed on September 12, 2017, is the operative complaint. Dkt. No. 19; Dkt. No. 21.

plaintiff alleges is a clear indication that Defendant Vargas had reported their conversation to the Northern Riders gang leader. Dkt. No. 51-1 at 4. Because plaintiff sought a position over which the Northern Riders gang claimed ownership, the Northern Riders and SVSP officers coordinated the attack on plaintiff by Carr. Dkt. No. 51-1 at 4.

On April 2, 2017, inmate Carr assaulted plaintiff, causing plaintiff serious physical injury. Dkt. No. 51-1 at 1. Plaintiff was not provided with any medical attention following this assault. He was first escorted to the Housing Unit 5 holding cell, and then returned to his cell. Dkt. No. 51-1 at 1. Defendant Alvarez visited plaintiff at his cell that day and asked plaintiff if he had any enemy concerns with respect to Carr or other inmates. Plaintiff asked Defendant Alvarez for medical attention. Dkt. No. 51-1 at 1. Initially, Defendant Alvarez stated that plaintiff had already been examined and cleared by medical staff. Dkt. No. 51-1 at 1. Then Defendant Alvarez stated that he did not see any physical reasons that plaintiff required medical attention but if plaintiff signed the marriage chrono, Defendant Alvarez would see about getting plaintiff medical attention. Dkt. No. 51-1 at 1-2.[2] Plaintiff signed the chrono and asked again for medical attention, informing Defendant Alvarez that he no longer could open his mouth, no longer had any feeling in his face, and had a severe headache. Dkt. No. 51-1 at 2. Defendant Alvarez said that he would have plaintiff seen by medical personnel, but plaintiff was not seen by medical personnel that day.

On April 3, 2017, plaintiff awoke with a visible black eye, a swollen and discolored jaw, and nasal blockage. Dkt. No. 51-1 at 2. He was unable to open or close his jaw, and he suffered from a severe headache and difficulties. Dkt. No. 51-1 at 2. Plaintiff was unable to eat his breakfast because he was unable to move his upper and lower jaw. Dkt. No. 51-1 at 2. Plaintiff informed the second watch officer that he required medical attention. The second watch officer stated that he would contact medical for plaintiff but did not do so. Dkt. No. 51-1 at 2.

At 8:30 a.m. that day, correctional officers initially refused to release plaintiff from his

---

[2] A "marriage chrono" is a general chrono in which an inmate states that he does not consider another inmate to be an enemy and that he can safely program with that inmate on the same facility. Dkt. No. 47-2 ("Alvarez Decl.") at ¶ 7; Dkt. No. 51-2 at 5.

housing unit to attend his job as a second watch porter. Dkt. No. 51-1 at 2. After plaintiff was finally released from his housing unit, he was informed that he was not needed as a porter that morning and that he should return to his cell. Dkt. No. 51-1 at 3. Plaintiff again requested medical attention. Dkt. No. 51-1 at 3. The correctional officer stated that plaintiff could go to the medical clinic at yard time. Dkt. No. 51-1 at 3. Plaintiff repeated that he really needed medical assistance and that his jaw was seriously damaged. Dkt. No. 51-1 at 3. The correctional officer called medical and directed plaintiff to go to the Facility D patio for medical services. Dkt. No. 51-1 at 3.

Around 9:00 a.m. that day, plaintiff was released from his housing unit and started walking on the yard track toward the program area's gates. Dkt. No. 51-1 at 3. Several yards later, plaintiff saw Carr walking hurriedly towards him and cutting across the recreational field to reach him. Dkt. No. 51-1 at 3. Plaintiff states that it was clear that Carr intended to assault him. Upon reaching plaintiff, Carr began to throw punches. Dkt. No. 51-1 at 3. To defend himself, Plaintiff threw punches as well, and a fight ensued. Dkt. No. 51-1 at 3. Because plaintiff and Carr are from two opposing geographic locations of California, other inmates joined in, resulting in a melee of eight to ten inmates. Dkt. No. 51-1 at 3. The fight continued until the yard observation tower noticed the disturbance. Dkt. No. 51-1 at 3. Plaintiff was rendered unconscious and was transported away by ambulance. Dkt. No. 51-1 at 3.

### III. Defendants' Version of Events

Defendant Vargas and Alvarez deny asking Carr to assault plaintiff, and state that they did not know beforehand, and had no reason to know, that Carr would assault plaintiff on April 2 and 3, 2017. Dkt. No. 47-6 ("Vargas Decl.") at ¶ 2; Dkt. No. 47-2 ("Alvarez Decl.") at ¶ 17.

On April 1, 2017, Defendant Vargas did not work at SVSP. Vargas Decl. at ¶ 2.

On April 2, 2017, Defendant Vargas worked as a floor officer in housing unit D6 and was not in charge of plaintiff's work schedule. Vargas Decl. ¶ 3. Carr's assault on plaintiff happened sometime in the morning of April 2, before 2:00 p.m. Dkt. No. 47-3 ("Garcia Decl."), at ¶ 3. Defendant Garcia was on the yard of housing unit D5 when Carr assaulted plaintiff, but Defendant Garcia did not observe the assault. Garcia Decl. ¶¶ 4, 5, 7. Defendant Garcia realized the assault

had occurred when the nurse blew the whistle after the assault. Garcia Decl. ¶ 7. By that time, Carr had already left the scene. Garcia Decl. ¶ 7. Defendant Garcia walked over to where plaintiff was located. Garcia Decl. ¶ 8. Plaintiff was conscious and was either lying on the ground or sitting on the ground with his back against the bench. Garcia Decl. ¶ 8. Defendant Garcia and a colleague helped plaintiff to his feet, and another officer escorted plaintiff away. Garcia Decl. ¶ 9. Because everything happened so quickly, Defendant Garcia did not observe what kind of injuries, if any, plaintiff suffered. Garcia Decl. ¶ 11. Plaintiff did not ask Defendant Garcia for any medical help while on the yard, and Defendant Garcia did not see or speak with plaintiff again. Garcia Decl. ¶¶ 12, 14. Defendant Garcia remained on the yard and continued to monitor yard activities to ensure that no further incidents happened. Garcia Decl. ¶ 12.

Defendant Alvarez did not arrive at housing unit D5 until 2:00 p.m. that day, after the fight had occurred. Alvarez Decl. ¶ 3. Defendant Alvarez stopped by plaintiff's cell around 2:45 pm and asked if plaintiff had any enemy concerns with Carr or any other inmate in Facility D. Alvarez Decl. ¶¶ 6, 7. Plaintiff responded that he did not. Defendant Alvarez then asked plaintiff to sign a Form 128B, colloquially referred to as a marriage chrono, confirming that he did not have any enemy concerns. Alvarez Decl. ¶ 7. Plaintiff signed the Form 128B. Plaintiff also asked Defendant Alvarez for medical help. Alvarez Decl. ¶ 8. However, Defendant Alvarez saw no signs that plaintiff had any injuries that required immediate medical attention. Alvarez Decl. ¶ 10. Defendant Alvarez saw no injuries on plaintiff's body, such as bruises, scratches or swelling. Alvarez Decl. ¶ 10. Defendant Alvarez noted that plaintiff did not seem in distress during the conversation, was mobile, was coherent, and was fully able to have a conversation. Alvarez Decl. ¶ 10. Defendant Alvarez therefore told plaintiff that he should follow the usual procedure to see medical staff, which is to either submit a medical slip requesting to be seen by a doctor or to speak with medical staff when they "round" the housing unit, which is done three times per the medical staff person's shift. Alvarez Decl. ¶¶ 11, 12. Defendant Alvarez denies refusing to call for medical help unless plaintiff signed the marriage chrono; denies threatening plaintiff with further acts of violence; and denies telling plaintiff to stop filing complaints against SVSP staff. Alvarez Decl. ¶¶ 14, 15.

Inmate Carr stated that, on April 2, 2017, he learned that plaintiff had put in a "kite," with his name and signature, that disclosed that Carr and other inmates were bringing phones into the prison. Dkt. No. 48 at 29. Carr was angry because Carr was making a lot of money at the prison bringing in phones and plaintiff's kite constituted "snitching" and messed up Carr's smuggling. Dkt. No. 48 at 32. Carr assaulted plaintiff because plaintiff had snitched on him which was a sign of disrespect. Dkt. No. 48 at 36. When Carr saw that the officers' backs were turned to plaintiff, Carr went over to plaintiff, knocked plaintiff out, put on plaintiff's hat and glasses and walked away. Dkt. No. 48 at 30-31. Carr signed the marriage chrono on April 2, 2017 because he wanted to finish what he started in that he felt that the April 2nd assault was not enough, and he wanted to send a message that plaintiff should not be snitching. Dkt. No. 48 at 38. At the time Carr signed the marriage chrono, plaintiff's signature was already on the chrono. Dkt. No. 48 at 38. Carr denies being ordered or encouraged in any way by Defendants Vargas, Garcia and Alvarez, or by any other SVSP officer, to attack plaintiff. Dkt. No. 48 at 39-41.

## IV. CDCR Grievance Procedure and Plaintiff's Relevant Grievances

### A. CDCR Grievance Procedure

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of review: (1) screening at the first level of review by a prison official who did not participate in the event at issue and who is of equivalent or higher rank than the participating staff, unless the first level of review is exempted; (2) a second level of review by a hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent; and (3) a third level of review by a designated representative under the supervision of the third level Appeals Chief or equivalent. *Id*. § 3084.7. The third level of review exhausts administrative remedies. *Id.* § 3084.7(d)(3).

The following CDCR regulations were in effect during the relevant time period.

**Time Limits for Submitting Grievances.**  Section 3084.8(b)(1) requires inmates to submit the grievance within thirty calendar days of the occurrence of the event being grieved.  15 Cal. Code Regs. § 3084.8(b)(1).  Section 3084.3(b) provides that this deadline for filing a grievance is not stayed by an inmate's inability to obtain supporting documentation.  Section 3084.3(b) instructs that if an inmate is unable to obtain supporting documents, the inmate shall submit the grievance with all available supporting documents and in Part B of the grievance explain why any remaining supporting documents is unavailable. 15 Cal. Code Regs. § 3084.3. Section 3084.1 limits inmates to one grievance every fourteen calendar days unless the grievance is accepted as an emergency grievance.  The fourteen calendar day period commences on the day following the inmate's last accepted grievance.  15 Cal. Code Regs. § 3084.1(f).

**Rejection of Grievances.**  Section 3084.6(b) sets forth reasons that a grievance will be rejected.  *See generally* 15 Cal. Code Regs § 3084.6(b).  Section 3084.6(b)(3) provides that a grievance may be rejected if the inmate has exceeded the allowable number of grievances filed in a fourteen calendar day period pursuant to the provisions of Section 3084.1(f).  15 Cal. Code Regs. § 3084.8(b)(3).  However, a grievance that is rejected pursuant to Section 3084.6(b) may later be accepted if the reason noted for the rejection is corrected and the appeal is returned by the inmate or parolee to the appeals coordinator within thirty calendar days of rejection.  15 Cal. Code Regs. § 3084.6(a)(2).

**Cancellation of Grievances.**  Section 3084.6(c) sets forth a non-exhaustive list of circumstances that require cancellation of grievances.  *See generally* 15 Cal. Code Regs § 3084.6(c).  Section 3084.6(c)(2), (4) provides that a grievance may be cancelled if it either duplicates an inmate's previous grievance upon which a decision has been rendered or is pending, or if time limits for submitting the grievance are exceeded even though the inmate had the opportunity to submit within the prescribed time constraints.  15 Cal. Code Regs. § 3084.6(c)(2), (4).  Inmates may not resubmit cancelled grievances unless a determination is made that the cancellation was erroneous or new information is received which makes the grievance eligible for further review.  15 Cal. Code Regs. § 3084.6(f).  However, an inmate may file a separate

8

grievance challenging the application of the rules provided in Section 3084.6(c) that resulted in the cancellation of the grievance.  15 Cal. Code Regs. § 3084.6(f).

**Grievances Alleging Staff Misconduct / Staff Complaints.**  If an inmate submits a grievance challenging staff misconduct, correctional staff shall screen the grievance to determine whether it should be processed as a routine grievance, or processed as a staff complaint appeal inquiry, or referred to Internal Affairs ("OIA") for an investigation.  15 Cal. Code Regs. §§ 3084.5(b)(4), 3084.9(i)(1).  Staff complaints are considered an exception to the regular grievance process and undergo a separate and different screening and investigation process from routine grievances.  15 Cal. Code Regs. §§ 3084.7(e), (h); 3084.9(i).  Staff complaints result in confidential reports which may be viewed only by the accused staff and the staff involved in processing the staff complaint; the inmate will only be informed whether the staff complaint has been referred to OIA, and whether the findings determined that the staff in question committed misconduct.  15 Cal. Code Regs. § 3084.9(i).

**Identifying Staff Members Involved**.  Section 3084.2(a)(3)-(4) requires inmates to identify the staff members involved with the following level of specificity:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

15 Cal. Code Regs. § 3084.2(a)(3)–(4).  However, the failure to identify staff members is not a basis for cancellation or rejection of a grievance.  *See generally* 15 Cal. Code Regs. §§ 3084.6(b), (c).

**B.**  **Plaintiff's Grievances Filed Between April 2, 2017 and September 22, 2017**

**1.**  **Grievances Filed Between April 2, 2017 and May 26, 2017**

Between April 2, 2017, the date of the first fight, and May 26, 2017, when plaintiff commenced this action, plaintiff submitted four grievances: Grievance No. CMC-E 17-00929 /

SVSP-L-17-01994, Grievance No. CMC-E 17-00951 / SVSP-L-17-01995, Grievance No. CMC-E 17-00986 / SVSP-L-17-02138,[3] and Grievance No. SVSP-L-17-02649.

**Grievance No. CMC-E 17-00929 / SVSP-L-17-01994.** On April 11, 2017, plaintiff submitted Grievance No. CMC-E 17-00929 / SVSP-L-17-01994, which stated that he had been subject to a non-disciplinary transfer away from SVSP to California Men's Colony ("CMC") because he required medical attention after being battered by an inmate. This grievance requested that plaintiff's property be sent from SVSP to CMC or that he be provided a television to calm his nerves. In a CDC Form 695 (screening form for inmate grievances) dated April 24, 2017, this grievance was rejected for failing to attach the necessary supporting documentation, specifically the relevant Form 1083 (inmate property inventory form) and a Form 22 answered by the SVSP property officer. Docket No. 47-4 ("Lomeli Decl."), Ex. B. The CDC Form 695 has the following form language at the bottom:

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

Dkt. No. 47-4 at 17. There is no indication in the record that plaintiff corrected the issue that led to the rejection and resubmitted this grievance.

**Grievance No. CMC-E 17-00951 / SVSP-L-17-01995.** On April 12, 2017, plaintiff submitted Grievance No. CMC-E 17-00951 / SVSP-L-17-01995, which stated that as a result of being the victim of a serious bodily injury on April 3, 2017, he was transported away from SVSP without his property. This grievance requested a full receipt of his property and that his property be sent from SVSP to CMC. In a CDC Form 695 dated May 3, 2017, this grievance was granted in part at the first level of review in that plaintiff's property had arrived at CMC's Receiving and Release Department and plaintiff would receive the property allowable in his current housing situation. Lomeli Decl., Ex. C. There is no indication in the record that plaintiff appealed this

---

[3] Because Grievance No. CMC-E 17-00929 / SVSP-L-17-01994, Grievance No. CMC-E 17-00951 / SVSP-L-17-01995, and Grievance No. CMC-E 17-00986 / SVSP-L-17-02138 were first submitted to the CMC appeals office and then transferred to the SVSP appeals office, they have grievance log numbers from both institutions.

first level decision.

**Grievance No. CMC-E 17-00986 / SVSP-L-17-02138.** On April 20, 2017, plaintiff submitted Grievance No. CMC-E 17-00986 / SVSP-L-17-02138. There are two versions of SVSP-L-17-02138 in the record. In one version, the subject of the grievance is identified as "personal injury" and the issue grieved is described as follows: "I was a victim of [serious bodily injury] on 4-2-17 and on 4-3-17. I had my jaw broken on both sides at S.V.S.P." Dkt. No. 47-4 at 29. In the other version, the subject of the grievance is also identified as "personal injury," but the issue grieved is slightly different in that it specifies that the injury was caused by an assault by another inmate: "I was assaulted by the same inmate on 4-2-17 and on 4-3-17. I had my jaw broken on both sides, this happen a[t] S.V.S.P." Dkt. No. 47-4 at 29. Both versions of the grievance requested compensation for his injuries, pain and suffering." Dkt. No. 47-4 at 31. Both versions were accepted by the CMC Appeals Office on April 21, 2017. Dkt. No. 47-4 at 29, 31. In a letter dated April 21, 2017, plaintiff was informed that this grievance had been forwarded to SVSP for further review. Dkt. No. 47-4 at 33. In a CDC Form 695 dated April 28, 2017, plaintiff was informed that this grievance was rejected because he had exceeded the allowable number of grievances that could be filed in a fourteen calendar day period pursuant to Section 3084.1(f). Dkt. No. 47-4 at 43.

On May 23, 2017, Plaintiff resubmitted a copy of this grievance[4] to the CMC appeals office, which forwarded it to the SVSP appeals office on or about May 25, 2017. Dkt. No. 47-4 at 5, 35. In a CDC Form 695 dated June 1, 2017, the SVSP appeals office rejected this grievance as incomplete and requested that plaintiff explain how the resubmitted grievance was not duplicative of SVSP-L-17-02138. Dkt. No. 47-4 at 36. There is no indication in the record that plaintiff responded to this CDC Form 695.

**Grievance No. CMC-E 17-01187 / SVSP-L-17-02649.** On May 3, 2017, plaintiff submitted Grievance No. CMC-E 17-01187 / SVSP-L-17-02649, stating that he was being subjected to cruel and unusual punishment and that his due process rights were being violated

---

[4] The record is unclear as to which version of Grievance No. SVSP-L-17-02138 was resubmitted on May 23, 2017.

United States District Court
Northern District of California

United States District Court
Northern District of California

because he had been placed in administrative segregation "without a 114D lockup order . . . or hearing" since April 3, 2017. Lomeli Decl., Ex. E. He requested immediate release from administrative segregation and removal from Salinas Valley State Prison. *Id.* At the first level of review, the request that plaintiff be removed from SVSP was granted in that he was housed at CMC at that time, but the first level decision noted that plaintiff could be returned to SVSP pending his classification status review. The first level decision denied the request to be released from administrative segregation on the grounds that plaintiff's case factors were "inconsistent with CMC current institutional security." *Id.* There is no indication in the record that plaintiff appealed this first level decision to the second level of review.

### ii) Grievances Filed Between May 26, 2017 and September 12, 2017

Between May 26, 2017, when plaintiff initiated this action, and September 12, 2017, when plaintiff filed the operative complaint, plaintiff submitted three grievances: Grievance No. SVSP-L-17-03734, Grievance No. SVSP-L-17-3746, and Grievance No. SVSP-L-12-4267.

**Grievance No. SVSP-L-17-03734.** On June 18, 2017, plaintiff submitted a Form 22 Request for Interview asking that his property be transferred from CMC receiving and release and 2nd floor hospital to his old cell in SVSP. Dkt. No. 47-4 at 48. He attached the following letter to his Form 22:

> I was on D-yard 4-2-17 and I was batter[ed] by an inmate, forced to sign a chrono that clearly states I was battered and witness[ed] by staff. Then I was never given any medical attention or was a 7219 perform[ed] on me. Also the c/o's officer never wrote a report on the incident. Then the next day in the mor[n]ing yard the exact same inmate (Carr) and his homie batter[ed] me again, which was so serious that I was rushed to Natividad Hospital and then transfer[red] to CMC. All my property is up there in R&R and in my old cell on the 2nd floor hospital, Sgt. Tomaliso & Sgt Cohen runs the hospital. I just want my property sent to me so I can have my stuff, and my legal work. I shouldn't be in this situation if D-yard officer followed procedures dealing with [batteries]. Can you please make something happen so I can have my property please. Thank you.

Dkt. No. 47-4 at 49. This Form 22 was converted to a staff complaint and assigned the log number SVSP-L-17-03734. Dkt. No. 47-4 at 48. On a CDC Form 695 dated June 30, 2017, plaintiff was informed that the grievance had been rejected pursuant to Section 3084.6(b)(14) in that it had not been submitted on the departmentally approved appeal (grievance) form. Dkt. No. 47-4 at 50. The CDC Form 695 contained the form language described *supra.* Dkt. No. 45-7 at 50. There is no indication in the record that plaintiff corrected the issue that led to the rejection

12

and resubmitted this grievance.

**Grievance No. SVSP-L-17-3746.**  On June 26, 2017, prior to receiving the rejection letter for Grievance No. SVSP-L-17-03734, plaintiff submitted Grievance No. SVSP-L-17-3746, which he titled "battery/policy and procedure."  In this grievance, he alleged that he had been battered by Carr on April 2 and 3, 2017, but that no incident report was written and no RVR issued regarding this incident.  Plaintiff further alleged that correctional officials forced him to sign a chrono stating that he and Carr could program safely together, threatening him with loss of property or ad-seg placement if he did not sign the chrono.  He alleged that staff failed to protect him.  Plaintiff requested financial compensation for his injuries and that this grievance be processed, noting that this was his second attempt to grieve the battery.  Lomeli Decl., Ex. G.  In a letter dated June 27, 2017, plaintiff was informed that this grievance had been screened at the first level and was being returned to him for an explanation as to how this grievance was not a duplicate of Grievance No. SVSP-L-17-3734.  Dkt. No. 47-4 at 56.  In a CDC Form 695 dated July 14, 2017, plaintiff was informed that this grievance had been cancelled as duplicative of Grievance No. SVSP-L-17-3734, pursuant to Section 3084.6(c)(2) of the California Code of Regulations, Title 15.  Dkt. No. 47-4 at 57.  The CDC Form 695 contained the form language described *supra*.  Dkt. No. 45-7 at 57. There is no indication in the record that plaintiff filed a separate grievance challenging this cancellation.

**Grievance No. SVSP-L-12-4267.**  On July 19, 2017, plaintiff submitted Grievance No. SVSP-L-12-4267, which he titled "unprofessional/duties."  In this grievance, he alleged that on April 2, 2017, he was battered by inmate Carr and was forced to sign a marriage chrono; that Sergeant Alvarez did not provide him with medical treatment or an incident report on April 2, 2017; and that the following day, inmate Carr attacked him again resulting in a broken jaw. Lomeli Decl., Ex. H.  Plaintiff requested that the officer be retrained, and that the officer learn how to deal with battery and learn to not treat battery as mutual combat.  Lomeli Decl., Ex. H.  In a CDC Form 695 dated July 21, 2017, plaintiff was informed that his grievance had been screened at the second level and was being returned to him to explain why he did not submit a grievance regarding the April 2, 2017 incident within thirty days of the incident occurring.  Dkt. No. 47-4 at

67. Plaintiff responded that the delayed submission was not his fault because he had to request and obtain his classification records. *Id.* In a CDC Form 695 dated July 31, 2017, plaintiff was informed that his grievance had been cancelled pursuant to Section 3084.6(c)(4) in that he had exceeded the time limits for grieving that incident. Dkt. No. 47-4 at 68. Plaintiff was further informed that Section 3084.3(b) provides that an inmate should not delay submitting a grievance within the thirty day period due to failure to obtain supporting documentation, but should instead submit the grievance with all available supporting documentation and explain in Part B of the grievance form why the remaining supporting documents were unavailable. Dkt. No. 47-4 at 68. The CDC Form 695 contained the form language described *supra*. Dkt. No. 45-7 at 68.

On August 10, 2017, Plaintiff appealed this cancellation to the Office of Appeals, seeking a third-level review, stating as follows:

> This cancellation is erroneous and the nature of the subject matter (extremely serious) should be given departmental review – please review at the third level of review.

Dkt. No. 47-7 at 18. The Office of Appeals returned the grievance to Plaintiff with a CDC Form 695 dated September 18, 2017, which stated as follows:

> It has been determined that you are attempting to submit an appeal that has previously been cancelled. Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the appeals process. Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted. You have 30 calendar days to appeal the cancellation. You must submit your appeal to the appeals office that issued the cancellation. Time constraints begin from the date on the screen out form which cancelled your appeal.

Dkt. No. 47-7 at 22.

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies. Dkt. No. 47. Plaintiff argues that administrative remedies were effectively unavailable to him because he attempted to exhaust his administrative remedies through at least six separate grievances, all of which were screened out for a "myriad of unjustified reasons." Dkt. No. 51 at 2-6.

14

Defendants also argue that Defendants Vargas and Alvarez are entitled to summary judgment on plaintiff's claim for retaliation and civil conspiracy because the undisputed facts show that neither defendant took adverse action against plaintiff; that Defendants Vargas and Alvarez are entitled to summary judgment on plaintiff's claim for deliberate indifference to his safety because the undisputed facts show that they did not know that inmate Carr planned to assault plaintiff; and that all defendants were not deliberately indifferent to plaintiff's serious medical needs. Dkt. No. 47.

Plaintiff disputes defendants' assertion that he suffered no serious injuries from the April 2, 2017 assault, stating that the initial assault left him with a visible black eye, swollen and discolored jaw, inability to open and close his jaw, severe headache and vision difficulties. Plaintiff further argues that Carr's attack on him was coordinated by the Northern Riders gang and SVSP officers because soon after plaintiff informed Defendant Vargas that the Northern Riders claimed that the yard crew position sought by plaintiff was designated solely for Northern Riders members, the Northern Riders gang leader approached plaintiff and said, "why are you trying to get the homies' yard crew job," indicating that Defendant Vargas had spoken to the Northern Riders leader, and plaintiff was attacked soon thereafter by a Northern Riders member. Dkt. No. 51.

### A.     Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

United States District Court
Northern District of California

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### B. Exhaustion

#### 1. Legal Standard for Exhaustion

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Courts may not create their own "special circumstances" exceptions to the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850,

1856 (2016) (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably but mistakenly believed he had exhausted administrative remedies).

A prisoner must exhaust administrative remedies before bringing his suit to federal court, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before prisoner sends complaint to court, action will be dismissed even if exhaustion is completed by time complaint is filed). Prisoners must exhaust all available remedies, regardless of whether the remedies meet federal standards or whether the remedies are plain, speedy and effective. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford*, 548 U.S. at 84.

Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172, 1176 (9th Cir. 2014) (en banc) (reversing district court's grant of summary judgment to defendants on exhaustion issue because defendants did not carry their initial burden of proving that there was an available administrative remedy that prisoner-plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005) (there can be no absence of exhaustion unless some relief remains available; movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of administrative remedy process). Once the defendant has carried the burden of proving that the prisoner did not exhaust the administrative remedy, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively

unavailable to him.  *Id*; *see also Draper v. Rosario*, 836 F.3d 1072, 1079–80 (9th Cir. 2016).

The Supreme Court has identified three circumstances where an administrative remedy is unavailable.  *Ross*, 136 S. Ct. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.* (offering as example prison handbook "directing inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions").  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id.* (offering as example situation where "some mechanism exists to provide relief, but no ordinary person can discern or navigate it").  Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1863 (citing as examples *Woodford*, 548 U.S. at 102, and various appellate court cases addressing "a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures").  The *Ross* court describes these categories as "three kinds of circumstances," and does not suggest that these categories are exclusive.  *Id.* at 1859.

## 2. Analysis

Plaintiff does not dispute that he failed to exhaust CDCR's administrative remedies for the claims raised in this action.  Dkt. No. 51 at 3.  Accordingly, the Court considers whether Plaintiff has carried his burden of providing evidence from which it can be reasonably inferred that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  The Court must first determine which grievances raised the claims in this action and whether the grievances submitted after plaintiff initiated this action can be considered for purposes of the PLRA's exhaustion requirement.

### a) Relevant Grievances

Plaintiff claims that he submitted six different grievances regarding the claims raised in this action, but only identifies three grievances:  Grievance No. SVSP-L-17-03734 (submitted June 18, 2017), Grievance No. SVSP-L-17-03746 (submitted June 26, 2017), and Grievance No.

SVSP-L-17-04267 (submitted June 19, 2017). Dkt. No. 51 at 3–5. The Court's review of the record indicates that plaintiff submitted four grievances related to the claims in this action — the three grievances identified by plaintiff and Grievance No. CMC-E 17-00986 / SVSP-L-17-02138 (submitted April 20, 2017). Only Grievance No. SVSP-L-17-02138 was filed prior to commencing this action.

The Ninth Circuit has clearly held that the PLRA's exhaustion requirement requires presuit exhaustion even if there is exhaustion while the suit is pending:

> Section 1997e(a) specifies that "[n]o action shall be brought ... until ... available remedies are exhausted." 42 U.S.C. § 1997e(a). Under this provision, no claim may be pursued in court unless the prisoner has given the prison authorities an opportunity to consider providing some relief regarding the facts underlying the grievance. *See Booth v. Churner*, 532 U.S. 731, 736 (2001). That requirement necessarily applies to all claims alleged . . . Also, a district court must dismiss a case without prejudice "when there is no presuit exhaustion," even if there is exhaustion while suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (per curiam) (emphasis added).

*Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). There is an exception to the presuit exhaustion requirement. Where an amended complaint alleges new claims that were not exhausted prior to bringing the action, the PLRA's exhaustion requirement is met for the newly added claims as long as the new claims were exhausted prior to the filing of the amended complaint. *See Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014). However, this exception does not apply here because the claims at issue in this action were alleged in the initial complaint, and not raised for the first time in the amended complaint. The initial complaint alleged that defendants "staged" Carr's assault on plaintiff and refused to provide him with medical care, in retaliation for plaintiff complaining about not being allowed to perform his job duties, in violation of the First and Eighth Amendments, and as an act of conspiracy. Dkt. No. 1 at 4, 6, 8, 10–16; Dkt. No. 16. The amended complaint again raised these same claims. Dkt. Nos. 19 and 21. The primary difference between the initial complaint and the amended complaint is that the amended complaint omits certain claims which the Court had informed plaintiff were either deficient or not cognizable. Dkt. Nos. 1, 16, 19 and 21. Accordingly, in considering whether Plaintiff satisfied the PLRA's exhaustion requirement, the Court may only consider Grievance No. SVSP-L-17-02138.

### b) Claims Raised by Grievance No. SVSP-L-17-02138

Plaintiff has raised four claims against Defendants Vargas and Alvarez in this action: (1) in retaliation for plaintiff stating that he would file a grievance against Defendant Vargas, Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff and denied plaintiff medical treatment on April 2, 2017, in violation of his First Amendment right to access the courts; (2) Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff, in violation of the Eighth Amendment prohibition on deliberate indifference to inmate safety; (3) Defendants Vargas and Alvarez denied plaintiff medical treatment on April 2, 2017, in violation of the Eighth Amendment prohibition on deliberate indifference to an inmate's serious medical needs; and (4) Defendants Vargas and Alvarez engaged in a civil conspiracy when they ordered inmate Carr to attack plaintiff. Plaintiff has raised only one claim against Defendant Garcia, that Defendant Garcia denied him medical treatment on April 2, 2017, in violation of the Eighth Amendment prohibition on deliberate indifference to an inmate's serious medical needs.

In one version of Grievance No. SVSP-L-17-02138, plaintiff stated that on April 2 and 3, 2017, he was assaulted by the same inmate, resulting in his jaw being broken on both sides. Dkt. No.47-4 at 29. In another version, he stated that he was the victim of great bodily injury, resulting in his jaw being broken on both sides. Dkt. No. 47-4 at 31. In both versions, Plaintiff requested compensation for his injury, and for pain and suffering. Dkt. No. 47-4 at 29, 31. Viewing Grievance No. SVSP-L-17-02138 in the light most favorable to plaintiff, this grievance can be construed as alleging that prison officials are responsible for the assault suffered by plaintiff on April 2 and 3 because plaintiff alleged that he was entitled to compensation for the injuries suffered from the assault. However, the grievance does not mention being denied medical care, or attribute the broken jaw to anything but the assault. Accordingly, plaintiff's claims regarding the denial of medical treatment were not exhausted. The Court therefore GRANTS summary judgment in favor of Defendant Garcia for failure to exhaust administrative remedies because the only claim against Defendant Garcia is that he denied plaintiff medical attention on April 2, 2017. The Court also GRANTS summary judgment in favor of Defendants Vargas and Alvarez for failure to exhaust administrative remedies with respect to the following claims: Defendants

1    Vargas and Alvarez denied plaintiff medical treatment on April 2, 2017, in violation of plaintiff's

2    First Amendment right to access the courts without retaliation and in violation of the Eighth

3    Amendment prohibition on deliberate indifference to an inmate's serious medical needs.  The

4    Court now turns to whether plaintiff has met his burden of showing that the CDCR grievance

5    process was unavailable with respect to Grievance No. SVSP-L-17-02138.

6                    **c)    Availability of CDCR Grievance Process for SVSP-L-17-02138**

7            Plaintiff does not directly address the rejection of Grievance No. SVSP-L-17-02138.  His

8    opposition argues generally that correctional officials made the grievance process unavailable by

9    screening out his grievances for unjustified reasons.  Specifically, Plaintiff argues that prison

10   officials rendered the administrative grievance process unavailable when they improperly rejected

11   Grievance No. SVSP-L-17-02138 for violating the time limits set forth in 3084.1(f) because there

12   are "no statute of limitations within[] the [California Code of Regulations]; time limits are only

13   directory," citing to 15 Cal. Code Regs. § 3000.5(f).  Plaintiff's argument fails because his

14   construction of Section 3000.5(f) is inconsistent with the plain meaning of the regulation; would

15   have the practical consequence of rendering pointless certain portions of the CDCR regulations;

16   and would be inconsistent with the grievance system set forth in 15 Cal. Code Regs. § 3084 *et seq.*

17           The standard canons of statutory construction require a court to give words used in a

18   regulation their plain and ordinary meaning.  *Malat v. Ridell*, 383 U.S. 569, 571 (1966).

19   Additionally, in determining the meaning of a regulation, the court examines the language of the

20   regulation, the legislative history, and the practical consequences of any suggested interpretation.

21   *United States v. Christensen*, 419 F.2d 1401, 1403–04 (9th Cir. 1969).  All ambiguities should be

22   resolved in favor of an interpretation consistent with the statutory and regulatory scheme.  *See*

23   *United Telecommunications, Inc. v. Comm'r of Internal Revenue*, 589 F.2d 1383, 1390 (10th Cir.

24   1978).  Section 3000.5 states as follows:

25           The time limits specified in these regulations do not create a right to have the specified
             action taken within the time limits. The time limits are directory, and the failure to meet
26           them does not preclude taking the specified action beyond the time limits.

27   15 Cal. Code Regs. § 3000.5(f).  Giving the words in Section 3000.5(f) their plain and ordinary

28   meaning, Section 3000.5(f) applies to regulations which set forth actions that shall be taken by

                                                    21

prison officials and specifies a time limit for taking those actions.  Section 3000.5 specifies that the regulations does not create a right, such as a due process right, to have that action taken within the time specified.  *Cf. Bejarano v. Best*, No. 111CV00589LJODLBPC, 2016 WL 4247856, at *1 (E.D. Cal. Aug. 10, 2016), *aff'd sub nom. Bejarano v. Allison*, 698 F. App'x 471 (9th Cir. 2017) ("[Section 3000.5(f)] affords discretion to prison officials to excuse non-compliance with regulatory deadlines . . .").  Plaintiff's broad application of Section 3000.5(f) to all time limits set forth in Title 15 of the California Code of Regulations, Division 3, Chapter 1, Rules and Regulations of Adult Operations and Programs, misreads the plain text of Section 3000.5(f).  Plaintiff's reading of Section 3000.5(f) would also result in invalidating all time limits set forth in 15 Cal. Code Regs. § 3084 *et seq.*, thereby fundamentally altering the CDCR's grievance process by removing limits on the number of grievances an inmate can file within specified time periods and by not requiring an inmate to grieve an incident promptly after its occurrence.  The rejection of Grievance No. SVSP-L-17-02138 for failing to wait fourteen days to file another grievance, as required by Sections 3084.1(f) and 3084.6(b)(3), did not violate Section 3000.5(f).

Although the Court finds plaintiff's argument unpersuasive, viewing the record in the light most favorable to plaintiff, the Court finds that there is a triable issue of fact as to whether the CDCR grievance process was available to him with respect to Grievance No. SVSP-L-17-02138. An administrative procedure is unavailable to an inmate when prison administrators thwart an inmate from taking advantage of the grievance process by applying the procedural rules to prevent an inmate from having his grievance heard on the merits.  *Cf. Ross*, 136 S. Ct. at 1863 (administrative remedy available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."). Here, viewing the record in the light most favorable to plaintiff, there is a triable issue of fact as to whether correctional officials thwarted plaintiff from using the CDCR administrative grievance process when they did not process Grievance No. SVSP-L-17-02138 as a staff complaint. Grievance No. SVSP-L-17-02138 was rejected for violating Section 3084.1(f), which limits an inmate to one grievance per fourteen day calendar period.  However, pursuant to Section 3084.9(i) of the California Code of Regulations, title 15, when an inmate submits a grievance challenging

staff misconduct, correctional staff shall screen the grievance to determine whether it should be processed as a staff complaint appeal inquiry, which is considered an exception to the regular grievance process. Because staff complaints are an exception to the regular grievance process, they are not subject to the grievance limits set forth in Section 3084.1(f). In other words, if Grievance No. SVSP-L-17-02138 had been designated a staff complaint, it would not have violated Section 3084.1(f). Section 3084(g) defines "staff misconduct" as "staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard." 15 Cal. Code Regs. § 3084(g).

Viewed in the light most favorable to plaintiff, Grievance No. SVSP-L-17-02138 could be construed as a staff complaint because it blamed prison officials for the assault suffered by plaintiff on April 2 and 3, 2017. Defendants argue that correctional officials correctly declined to categorize Grievance No. SVSP-L-17-02138 as a staff complaint because it did not mention names of any SVSP staff. However, Section 3084.9(i) does not specify that a grievance must identify correctional staff by name to be categorized as a staff complaint. And although Section 3084.2(a)(3)-(4) instructs inmates submitting grievances to identify staff members by last name, first initial, time or position, the failure to do so is not a basis for cancelling or rejecting a grievance.

Accordingly, viewing the record in the light most favorable to plaintiff, the Court finds that Defendants have not demonstrated that there is no triable issue of fact as to whether the rejection of Grievance No. SVSP-L-17-02138 as violating Section 3084.1(f) rendered the CDCR administrative grievance process unavailable to plaintiff. Where material facts regarding exhaustion are disputed, summary judgment on exhaustion grounds should be denied, and the district judge should determine the disputed facts. *Albino*, 747 F.3d 1166. However, here the Court declines to hold an evidentiary hearing regarding whether the rejection of Grievance No. SVSP-L-17-02138 as violating Section 3084.1(f) rendered the CDCR administrative grievance process unavailable to plaintiff because, as discussed *infra*, the record shows that plaintiff's remaining claims against Defendant Vargas and Alvarez fail on the merits.

**C.  Remaining Claims Against Defendants Vargas and Alvarez**

Assuming arguendo that the rejection of Grievance No. SVSP-L-17-02138 rendered plaintiff's administrative remedies unavailable to him, the claims remaining in this action are (1) Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff in retaliation for plaintiff stating that he would file a grievance against Defendant Vargas; (2) Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff, in violation of the Eighth Amendment prohibition on deliberate indifference to inmate safety; and (3) Defendants Vargas and Alvarez engaged in a civil conspiracy when they ordered inmate Carr to attack plaintiff.

Plaintiff's claims turn on his allegation that Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff. But Plaintiff proffers no direct evidence to support his allegation and the indirect evidence he proffers is purely speculative. In support of his allegation, he alleges that from January to April 2017, correctional officers stationed at SVSP Facility D, Yard D2, consistently showed favoritism to the Northern Riders prison gang which assisted the Northern Riders in recruiting members; in the months prior to the assault, Defendant Vargas regularly refused to allow plaintiff to perform his job duties; he informed Defendant Vargas that he would file a grievance regarding Defendant Vargas's refusal; and after he spoke with Defendant Vargas about switching from second watch porter to Facility D2 yard crew, a position reserved by the Northern Riders for their members, the Northern Riders gang leader reproached him for trying to take a Northern Riders job. Assuming these allegations to be true, these allegations are insufficient to raise a triable issue of fact as to whether Carr attacked plaintiff at Defendant Vargas or Defendant Alvarez's direction. Nothing in the record indicates that Carr is a Northern Rider gang member or otherwise explains why Carr would act on behalf of the Northern Riders and/or Defendants Vargas and Alvarez. Plaintiff also does not proffer any evidence that Defendant Alvarez knew of plaintiff's statement that he would file a grievance against Defendant Vargas. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Plaintiff has not demonstrated a genuine dispute as to whether Defendants Vargas and Alvarez order inmate Carr to attack him. Accordingly, the Court GRANTS summary judgment in favor of Defendants Vargas and Alvarez on the remaining claims.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment. The Court GRANTS defendants' motion for summary judgment on the grounds of non-exhaustion with respect to the following claims:  Defendant Garcia denied plaintiff medical attention on April 2, 2017; and Defendants Vargas and Alvarez denied plaintiff medical treatment on April 2, 2017, in violation of plaintiff's First Amendment right to access the courts without retaliation and in violation of the Eighth Amendment prohibition on deliberate indifference to an inmate's serious medical needs.  These claims are therefore dismissed without prejudice for failure to exhaust administrative remedies.  The Court grants summary judgment in favor of defendants with respect to the following claims on the grounds that there is no triable issue of fact as to whether Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff:  (1) Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff in retaliation for plaintiff stating that he would file a grievance against Defendant Vargas; (2) Defendants Vargas and Alvarez ordered inmate Carr to attack plaintiff, in violation of the Eighth Amendment prohibition on deliberate indifference to inmate safety; and (3) Defendants Vargas and Alvarez engaged in a civil conspiracy when they ordered inmate Carr to attack plaintiff.  These claims are therefore dismissed with prejudice.

The Court shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

This order terminates Dkt. No. 47.

**IT IS SO ORDERED.**

Dated:  9/30/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge